UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ DEC 1 1 2018 ★

BROOKLYN OFFICE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
ROBERT HOGAN, AKA
CHRISTOPHER PEYTON MAY-SHAW,
                    Plaintiff,

v.

THE CITY OF NEW YORK, POLICE OFFICER
CANDICE SMITH, Shield #725, SERGEANT BRUNO
PIERRE, POLICE OFFICER DANIEL O'HARE, Shield
#17735, POLICE OFFICER EARL ROCHESTER, Shield
#31302, SERGEANT KEVIN FRANCIS, Shield #1490,
and SERGEANT JAMES BERK, Shield #1311,
                    Defendant(s).
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**FIRST AMENDED
COMPLAINT**

17-CV-5591(LB)

Now comes, Christopher May-Shaw, hereinafter, Plaintiff,
hereby submits his FIRST AMENDED COMPLAINT Claiming Constitutional
violation of the Plaintiff's Fourth, Fifth, Sixth, Eighth and
Fourteenth Amendments based on false arrest and imprisonment,
illegal inventory search, denial of right to a fair trial,
malicious prosecution, deprivation of property without due process,
cruel and unusual punishment, and Monell Claims.

Plaintiff asks this Honorable Court to consider this
Amended Complaint under the Standards of Haines v. Kerner, 404
U.S. 519, holding that, a plaintiff is proceeding pro-se, the
Complaint must be considered a under a more lenient standard
than that accorded "formal pleadings drafted by lawyers."

(1)

1. This is a civil litigation action seeking damages against Defendants for committing acts under the color of law, and depriving Plaintiff of rights secured by the Constitution and Laws of the United States. Defendants, while acting in their individual and official capacities as Police Officer's in the City of New York, County of Kings, State of New York, deprived Plaintiff of his liberty without due process of law, made an unreasonable search and seizure of the property of Plaintiff without due process of law, thereby depriving Plaintiff of his rights, privileges and immunities garanteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments. This Court has jurisdiction of this action under 42 U.S.C. §1983 and under 28 U.S.C. §1343. The jurisdiction of this court is further invoked pursuant to 28 U.S.C. §1331.

2. Plaintiff is a resident of the State of Michigan, and a citizen of the United States.

3. At all relevant times, the City of New York was and still is a municipal corporation organized and existing under the laws of the state of New York, and the United States Constitution. Upon information and beleif, at all relevant times, Defendant CITY, it's agents, servants and employees operated, maintained and controlled the POLICE DEPARTMENT of the CITY, including all police officer's thereof.

4. At all relevant times, Defendant's Candice Smith Badge #725, Sgt. Bruno Pierre # unknown, and John Doe's 1-4, were at all times material to this complaint, duly appointed police officer's, employed by the CITY OF NEW YORK, in Kings County, assigned to the 67TH Precinct, located at 2820 Snyder Avenue in Brooklyn, New York.

5. Defendants acted in concert in the deprivation of Plaintiff's Constitutional rights.

6. Plaintiff sue's all defendants in their individual and official capacities.

## First Cause Of Action
### FALSE ARREST AND FALSE IMPRISONMENT

Plaintiff repeats paragraphs 1 through 6.

7. On June 15, 2016 at approximately 4:25pm, Plaintiff was a backseat passenger of a vehicle that was stopped by Defendants Smith and Sgt. Pierre, while traveling on Avenue D, near E.31st Street, in Brooklyn New York. The vehicle was stopped by Defendants, alleging a traffic violation of tinted windows. At all times, Plaintiff was a back seat passenger, committing no crimes.

8. On the abovementioned time and date, Defendant Smith and Sgt. Pierre stepped from a NYPD van. Smith approached the driver, and Sgt. Pierre approached the passenger side of the vehicle. Patricia Morris was driving the vehicle, and Mario Gaedion was riding in the front passenger seat. Plaintiff was seated directly behind the driver, commiting no crimes and/or traffic violations.

9. Defendant Smith approached and asked the driver for her license, registration and proof of insurance. The driver provided her license while explaining to Defendant that the vehicle did not contain a printed registration and insurance, whereas the vehicles "Temporary Texas Transport Plate" needed to be ran in order to retrieve the owner's

(3)

information as well as insurance.

10. After a short discussion between the driver and Defendant Smith regarding the vehicles transport status to a buyer from New York and the lack of registration and insurance, Plaintiff attempted to intervene by again, explaining that the occupants of the vehicle were not the owner's and were being compensated for delivering the vehicle.

11. At this point, Defendant Smith stated to Plaintiff, "You need to be quiet, you are in the backseat...I'm talking to the driver!" Plaintiff remained quiet in the back seat while texting and attempting to call the Car Broker. Still at all times, Plaintiff did not commit a crime and/or traffic violation.

12. Subsequently, Defendant's Smith and Sgt. Pierre consulted with John Doe's 1 through 4, who had arrived on the scene, at the rear of the vehicle. Defendant Smith removed the Texas Temp Plate and reviewed it with all Defendants.

13. Defendant's finally decided to arrest the driver, and as Defendant Smith placed handcuffs on the driver, Defendant's Sgt. Pierre and John Doe's 1 through 4 assisted in ordering Plaintiff and front seat passenger out of the vehicle. Plaintiff and other passenger was ordered to stand at the rear of the vehicle, directly near the trunk. The driver was placed in Defendant's Smith and Sgt. Pierre's NYPD van.

14. At this time Plaintiff asked Defendant Sgt. Pierre, "Why is she being arrested, and what do I need to do to get her out of jail?" Plaintiff asked this question under the impression that He was not under arrest. Defendant Sgt. Pierre replied, "She will see a judge tonight, unless one of y'all want to take her place?"

(4)

15. Defendant Smith came back to the vehicle, then again, consulted with all Defendants. Subsequently, Defendant Smith told the front seat passenger, "You can start walking!" The front seat passenger began walking up Avenue D.

16. Instead of allowing Plaintiff to walk away, Defendant Smith furthered her investigation asking Plaintiff, "Where do you reside in New York?" After stating "340 E.31st Street," Defendant Smith stated, "Well you're coming with us too!" Another John Doe Defendant placed cuffs on Plaintiff.

17. Without probable cause or legal justification, Plaintiff was lead to another police vehicle by two John Doe Defendants. From the backseat of the cruiser Plaintiff asked, "Why am I being arrested?" Defendant John Doe stated, "We will tell you when we get back to the precinct." This Defendant rode in the backseat with Plaintiff, the other Defendant drove the vehicle back to the precinct.

18. Before leaving the scene of the traffic stop, Plaintiff observed Defendant Sgt. Pierre get into the driver's seat of the Porsche and drive off with it. Defendant drove that vehicle to the 67th Precinct.

19. Upon Plainitff's arrival at the 67th Precinct Defendant John Doe's lead Plaintiff to a counter, where Plaintiff remained cuffed, and searched without probable. Plaintiff was removed of the following property: (1) Cartier Sun glasses [$2,800]; (2) 3 iphones [$600]; (3) $6,737 US Currency; (4) 4 ID's, birth certificate and social security card.

20. After being searched by Jonh Doe defendant, He called

(5)

Defendant Smith to the counter to re-count the US Currency, and to take account of the remaining property. Defendant Sgt. Pierre was present at the counter as well supervising Defendant Smith. Nevertheless, the Cartier glasses, Iphones, and the $6,737.00 of US Currency was never vouchered or returned to Plaintiff. Defendant's intentionally and negligently converted that property to their own personal use.

21. After being unlawfully searched and removed of personal property, Plaintiff was finger printed several times. On one occassion Plaintiff asked again why he was being printed and present at the precinct, and was again told that I would be advised soon. Plaintiff was placed in a holding cell that was unsanitary, with urine and feces on the floor.

22. Plaintiff was held in the holding cell four to five hours without being advised of any charges.

23. After the long wait in the holding cell, Plaintiff was brought upstairs to an interrogation room where a white male Detective, John Doe Defendant and Defendant Smith were present.

24. John Doe Detective read Plaintiff his Maranda Rights. After being advised of the "inventory search" of the vehicle, and the contents found subject to that search, Plaintiff declined to talk to Defendants and requested a lawyer. The following items were allegedly discovered:

1. loaded firearm
2. receipt Books (2) [which were destroyed by Def. Smith]
3. $93,000 US Currency (trunk)
4. Marijuana
5. personal paperwork of Robert Hogan
6. Male and Female clothing (trunk)

25. After declining to speak to Defendants and requesting a attorney, the John Doe Defendant Detective became upset and stated to Plaintiff, "Okay Christopher Payton...now you're FUCKED! And you still have that outstanding warrant in Michigan...you just fucked yourself even worse!" Both Defendant's left the room.

26. Plaintiff was brought back downstairs, and placed back into the holding cell, still unaware of the charges against me.

27. Plaintiff was subsequently transfered to Central Bookings, where Plaintiff was Booked and scheduled for court that nite.

28. After being booked, Plaintiff met with a Legal Aide Attorney who finally advised Plaintiff that he was being charged with the following offenses, wholly without probable cause:

(1) possession of fraudulent instrument [license plate] at time of traffic stop (TPO 1); (2) possession of fraudulent instrument [ID's at precinct] (TPO 2); (3) criminal possesion of a weapon [search at precinct] (TPO 2); (4) possession of marijuana [at precinct] (TPO 2).

29. Plaintiff was arraigned on above mentioned charges on or about June 16, 2016 and held on a $75,000 bond.

30. Patricia Morris was also charged and arraigned on the following charges: (1) VTL §401(1)(A) (no registration or proof of insurance) [TPO 1]; (2) VTL §375(12) (tinted windows) [TPO 1]; (3) possession of fraudulent instrument (license plate) [TPO 1]; (4) criminal possession of a weapon (at precinct) [TPO 2]; and (5) possession of marijuana (at precinct) [TPO 2].

31. Plaintiff was transported to Rikers Island where Plaintiff slept on the concrete floor for two to three days with food and feces all over the floors and walls. Plaintiff was forced to eat meals in the holding cell with feces filled up in the toilet.

32 On or about June 21, 2016 Plaintiff was brought to the Brooklyn Supreme Court for Grand Jury. Plaintiff's Legal Aide Attorney waived Plainitff's rights to testify at the Grand Jury. Patricia Morris testified at the Grand Jury Hearing and was found not guilty and was released from custody. Although Plaintiff was brought to court for the Grand Jury, the record reflects that Plaintiff was actually indicted on or about July 12, 2016.

33. Plaintiff asserts that, after being indicted, Plaintiff

retained Attorney Michael A. Sheinberg, and subsequently made bail through Empire Bail Bonds.

34. Plaintiff was incarcerated for approximately 34 days before being released from Rikers Island.

35. On or about August 10, 2016 Plaintiff was remanded back into custody and held again at Rikers Island to answer the criminal charges.

36. Plaintiff asserts that several court proceedings were held before pre-trial hearings began. On November 16, 2016 a combined Mapp/Huntley/Dunaway Hearing was held in front of the Honorable Shawndya L. Simpson, Court Part-24.

37. Defendant Candice Smith was the sole witness for the People, where she willfully and intentionally testified under oath inconsistently to the charging documents, accusatory instrument, Complaint Room Screening sheet, and the Grand Jury Synopsis Sheet.

38. Defendant Smith willfully and intentionally lied under oath testifying that Plaintiff made a verbal statement that "the car was his" but never testified to this statement during the Grand Jury, nor was the falsified statement written down on Defendants memo book.

39. At the conclusion of the hearings, the Honorable Judge Simpson could not make a decision, and due to the testimony and other facts of the case, Judge Simpson requested a Memorandum of Law in support of the Suppression Motions.

40. Attorney Michael A. Sheinberg submitted the Memorandum

Of Law, and Plaintiff submitted several letter's to the Honorable Judge Simpson demonstrating evidence of Plaintiff's innocence. Plaintiff's letter's were based on : (1) lack of DNA on the weapon; (2) Candice Smith's falsified evidence and testimony regarding the location of the weapon; and (3) Smith's inventory search not being in accordance with the Fourth Amendment or the NYPD Patrol Guide.

41. After several more proceedings, and Plaintiff's continued incarceration at Rikers Island, Plaintiff finally received justice.

42. On July 10, 2017, the Honorable Judge Simpson submitted a Decision and Order Suppressing all evidence and granting the Plaintiff's Mapp/Huntley/Dunaway hearings.

43. On or about July 19, 2017 the Assistant District Attorney Jingu Chong moved to dismiss the indictment with nothing more to go forward.

44. Paragraph's 1 through 43 demonstrates false arrest and false imprisonment.

45. On the above date and time of arrest, Defendant's intentionally handcuffed and arrested Plaintiff, without any just cause, or grounds therefore, and held against his will.

46. The false arrest and false imprisonment was caused by defendants, their agents, servants, and/or employees, without any warrant or legal process, without authority of the law, without any reasonable grounds or cause to beleive that Plaintiff was guilty of such crimes, or that Defendants had just cause to arrest and

imprison Plaintiff.

47. Plaintiff was wholly innocent of any crime and did not contribute in any way or manner to his arrest by Defendant's, and was forced to submit to the arrest, imprisonment and confinement entirely against his will.

48. Defendant's, as set forth above, intended to confine Plaintiff. Plaintiff was conscious of the confinement. Plaintiff did not consent to the confinement, and the confinement was not otherwise privileged.

49. By reason of the above described false arrest and false imprisonment, unsanitary and unconstitutional detention at Riker's Island for ten months fighting fabricated and false felony charges, Plaintiff was subject to great indignity, humiliation, mental anguish, pain and great distress mentally and physically, and. Plaintiff has otherwise been damaged.

50. By reasons of the above, Plaintiff requests to be awarded damages in the amount of $300,000 (three-hundred thousand dollars) in compensatory damages as to Defendant Smith.

51. By reason of the above willful and malicious conduct, including Defendant Smith's intent in the falsification of the criminal complaint and subsequent false testimony of finding the weapon "under the driver's seat, near the rear of the seat" where Plaintiff had been sitting was done by Defendant Smith with ill-will and intent to force, plant, or blame the weapon discovered on Plaintiff, Plaintiff requests to be awarded $175,000 in punitive damages as to Defendant Smith.

(11)

52. By reason of the above false arrest and false imprisonment, willful and malicious conduct, Plaintiff requests to be awarded $ 300,000 in compensatory damages as to Defendant Sgt. Pierre who approved of the actions of his partner Defendant Smith.

53. By reason of the above false arrest and false imprisonment, willful and malicious conduct, Plaintiff has been damaged and requests an award of $175,000 in punitive damages as to Defendant Sgt. Pierre. As to Defendants John Doe's 1-4, Plaintiff requests to be awarded $15,000 in compensatory damages and $10,000 punitve damages separately as to each John Doe Defendant for their failure to intervene with Plaintiff's constitutional violations from the back seat of the vehicle.

## Second Cause Of Action

### MALICIOUS PROSECUTION

54. Plaintiff repeats paragraph's 1 through 53.

55. On the above described date, times, and locations, Defendant Smith and Defendant Sgt. Pierre intentionally and recklessly initiated a criminal proceeding against the Plaintiff that lasted from June 15, 2016 until July 19, 2017, where Plaintiff appeared at 24 (twenty-four) court hearings. The criminal proceedings were terminated in Plaintiff's favor for the lack of probable cause to arrest and incarcerate Plaintiff.

56. By reason of the above mentioned malicious prosecution, Defendant's did violate Plaintiff's Fourth Amendment rights by initiating and commencing the criminal proceeding against Plaintiff. Defendant Smith appeared before a grand jury and intentionally and negligently misrepresented and falsified facts and evidence. Defendant Smith presented false, fraudulent and perjured testimony to the grand jury and during the Mapp/Huntley/Dunaway hearings.

57. By reasons of the above described malicious prosecution, Plaintiff has suffered mental distress, mental anguish, loss of liberty and property, pain and humiliation.

58. Plaintiff has otherwise been damaged by the defendants malicious and unethical conduct, Plaintiff therefore requests to be awarded $500,000 (five-hundred thousand dollars) as to Defendant Smith in compensatory damages.

59. By reason of the above described malicious prosecution, Defendant Smith's fabrication and falsification of evidence, as well as her falsified testimony that Plaintiff stated the vehicle was his, along with Defendant Smith planting the weapon near Plaintiff in the charging documents, Plaintiff has been subjected to great indignity, humiliation, mental anguish, pain and extreme distress mentally and physically, embarrasment by the media (news paper).

60. By reasons of above, Plaintiff has been damaged and requests to be awarded $250,000 (two-hundred and fifty thousand) in punitive damages as to Defendant Smith.

61. By reasons of above, Plaintiff request to be awarded $250,000 in compensatory damages against Defendant Sgt. Pierre for

assisting Defendant Smith in violating Plaintiff's Fourth Amendment right to be free from any arrest made without probable cause, as well as Defendant Sgt. Pierre's failure to intervene with Plaintiff's rights being violated.

62. By reasons of above, Plaintiff requests to be awarded $100,000 in punitive damages against Defendant Sgt. Pierre. As to both Defendants, Plaintiff requests that Defendants reimburse Plaintiff the expenses of his legal fee's in the amount of $15,000, and his bail fee of $5,000, and expenses of $15,000 for travel fee's of Plaintiff's Power Of Attorney flying and traveling to New York from Michigan to visit Plaintiff at Rikers Island and to attend court proceedings on Plaintiff's behalf. Also to be reimbursed the $93,000 in U.S. currency found in violation of the Fourth Amendment that has not been returned to Plaintiff. Also to be re-imbursed for stolen property, glasses [$2,800], Iphone's [$600] and $6,737.

### Third Cause Of Action

### DENIAL OF RIGHT TO A FAIR TRIAL

63. Plaintiff repeats paragraph's 1 through 62.

64. Defendant Smith violated Plaintiff's right to a fair trial in violations of the Fifth, Sixth, and Fourteenth Amendments, whereby, being the investigating official, fabricated evidence that she found the weapon under the driver's seat near the rear of the vehicle where Plaintiff had been sitting, to make a jury beleive Plaintiff was in possession of the weapon, then subsequently for-

(14)

warded that fabricated and falsified evidence to the District Att-
orney's office, which caused Plaintiff's deprivation of his liberty
as a result.

65. Defendant Smith's fabricated evidence and false testi-
mony (at grand jury and mapp/huntley/dunaway hearings) under oath
that plaintiff made a statement that the "vehicle is his" and that
the "weapon was found near Plaintiff" was what the District Attorney's
relied upon throughout the criminal proceedings.

66. Defendant Smith's fabricated and falsified conduct is
what formed the foundation of the criminal case against Plaintiff,
and a sufficient causal connection exists between Defendant's fab-
ricated evidence and statements and Plaintiff's pre-trial detention
where Plaintiff sat for ten months on Rikers Island, fighting the
criminal proceedings.

67. By reason of above mentioned denial of right to a fair
trial, Plaintiff has been denied His Fifth, Sixth, and Fourteenth
andmendment rights, and has suffered mental distress, mental anguish,
loss of liberty and property, and humiliatation.

68. By reason of above, Plaintiff requests to be awarded
$300,000 in compensatory damages against Defendant Smith.

69. By reason of above, Plaintiff requests to awarded
$150,000 in punitive damages against Defendant Smith.

70. By reason of abovementioned denial of right to a fair
trial, Plaintiff requests to be awarded $150,000 in compensatory

damages against Defendant Sgt. Pierre, and $75,000 in punitive damages for Defendant Sgt. Pierre's failure to intervene with his partner's direct disregard to Plaintiff's constitutional rights.

## Fourth Cause Of Action
## ILLEGAL INVENTORY SEARCH IN VIOLATION OF 4TH AMENDMENT

71. On June 15, 2016, Defendant Smith performed an "inventory search" of the vehicle after Defendant Sgt. Pierre drove the vehicle back from the scene of the traffic stop to the 67th Precinct Station House.

72. Defendant Smith testified at the grand jury and the mapp/huntley/dunaway pre-trial hearings that she performed the inventory search of the vehicle in accordance with the New York Police Department Patrol Guide.

73. Defendant Smith searched the vehicle, alone, without the supervision of her partner Sgt. Pierre.

74. Defendant Smith searxh the vehicle, finding men and women's clothing, suit cases, cash, marijuana and a firearm.

75. According to the NYPD Patrol Guide, an officer must "inventory all items found" inside the vehicle on a separate property form to safeguard a person's personal property. The Patrol Guide mandates a meaningful "inventory list" or the search would violate the Fourth Amendment.

76. Defendant Smith violated Plaintiff's Fourth Amendment

right to be free from illegal searches and seizures when she failed to provide a meaningful "inventory list" of all items found during the search.

77. Defendant Smith disregarded Plaintiff's Fourth Amendment right and the NYPD Patrol Guides policy when she failed to "inventory all items located throughout the vehicle." Defendant Smith only vouchered the evidence of a crime, which clearly demonstrated Defendant's reasons for searching the vehicle, which was to rummage around and search for evidence of a crime and not to inventory the contents inside the vehicle, and safeguard the property located within, which the Fourth Amendment and the NYPD Patrol Guide mandates.

78. Defendant Smith testified under oath at court proceedings that she followed the policy of the patrol guide, but failed to provide a meaningful inventory list, which is the "HALLMARK OF A INVENTORY SEARCH".

79. Following the court proceedings, the Honorable Judge Simpson requested more "clarification" regarding the inventory search and the patrol guide's policy. The Assistant District Attorney's Office never responded to Judge Simpson's request. Plaintiff provided the court with case law and a short brief/letter explaining the policy. Subsequently, the Honorable Judge Simpson granted Plaintiff's Mapp Hearing, declaring that the evidence found was discovered in violation of the Plaintiff's Fourth Amendment right.

80. By reasons of Defendant Smith failing to follow the NYPD Patrol Guide, and violating Plaintiff's Fourth Amendment right, Plaintiff has suffered mental distress, mental anguish, loss of liberty and property, humiliation, seizure of funds, and embarrassment of being placed in the New York Daily News, Plaintiff requests to be awarded $300,000 in compensatory damages.

81. By reasons of Defendant Smith's blatant disregard to the NYPD Patrol Guide and Plaintiff's Fourth Amendment rights, Plaintiff requests to be awarded $150,000 in punitive damaged due to Defendant Smith's willful and malicious conduct.

82. By reason of above, Plaintiff seeks $150,000 in compensatory damages against Defendant Sgt. Pierre for his failure to supervise Defendant Smith, and his failure to intervene with the Fourth Amendment violation.

83. By reasons of above, Plaintiff seeks $100,000 in punitive damages against Defendant Sgt. Pierre.

84. The CITY is liable under the doctrine of respondent superior as to all causes of action herein.

<u>Fifth Cause of Action</u>

<u>VIOLATIONS OF CONSTITUTIONAL RIGHTS UNDER 42.U.S.C.§1983 BY OFFICERS, IN THEIR INDIVIDUAL CAPACITIES AND AS AGENTS OF THE CITY</u>

85. Plaintiff repeats paragraphs 1 through 84.

86. At all relevant times, Defendant officers were employed by Defendant City of New York and the Police Department and were acting under the color of their official capacities and their acts were performed under the color of the policies, statutes, ordinances, rules and regulations of the City.

(18)

87.     At all relevant times, Defendant officers were acting pursuant to orders and directives from Defendant City of New York.

88.     At all relevant times; Defendant officers acted under color and pretenses of law, to wit: under color of the statutes, ordinances, regulations, customs and usages of the City of New York and the Police Department and the officers were acting under the color and pretense of law, when they, individually and collectively, engaged in the illegal conduct set forth in this Complaint to the injury of Plaintiff, and deprived him of the rights, privileges and immunities secured to Plaintiff by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States, and State of New York and 42 U.S.C.§1983.

89.     The unlawful and illegal conduct of the Defendant deprived Plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States and the State of New York:

(a)     The right of Plaintiff to be secure in his person and effects against unreasonable search and seizure under Fourth and Fourteenth Amendments to the Constitution of the United States;

(b)     The right of Plaintiff not to be deprived of life, liberty and property without due process of law;

(c)     The right to be free from the denial of a fair trial under the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

90.     By reasons of these violations, seizure of Plaintiff's person and property, destruction of evidence, falsification of evidence and reports, false arrest and false imprisonment, illegal inventory search, malicious prosecution, and denial of a fair trial of plaintiff, defendant Officers violated Plaintiff's rights and privileges as provided to him in the Constitution of the United States, and provided to him in the Constitution of the State of New York, and laws

(19)

thereto. The City Defendant officers and the City of New York under the doctrine of respondent superior, violated 42 U.S.C. § 1983.

91. As a direct proximate result of Defendant's actions, PDaintiff was subjected to great indignities and humiliation, pain and distress of mind and body and was humilated and defamed thereby. Plaintiff was also placed in the daily newspaper for further humiliation.

92. By reasons of above, Plaintiff will continue to suffer great mental pain and distress, fear of police officers from the actions of Defendant's, individually and collectively.

93. By reasons of above, Plaintiff has been damaged and seeks compensatory damages in the amount of $500,000, plus, punitive damages in the amount of $250,000, costs of the filing of this civil complaint, attorney's fees as set forth and provided by 42 U.S.C. § 1983, and such other relief as the court may deem just and proper.

94. Plaintiff also seeks an order returning the seized U.S. currency of $93,000, and the reimbursement of the criminal attorney's fee of $15,000, the fee of $5,000 paid for bail to Empire Bail Bonds, and the $15,000 in expenses for Plaintiff's Power of Attorney travel fees to attend court proceedings that was initiated by Defendants wholly without probable cause, and any other relief that this Court deems just.

SIXTH CAUSE OF ACTION

DEPRIVATION OF PROPERTY IN VIOLATION OF
DUE PROCESS AS WELL AS FOURTEENTH & FIFTH AMENDMENTS

95. Plaintiff repeats paragraphs 1 through 94 and realleges

(20)

each and every allegation as if it fully sets forth herein.

96. Defendants and the City of New York violated Plaintiff's Due Process rights by depriving Plaintiff of his property interest in the seized U.S. currency in the amounts of $93,654.13 and $6,737.

97. At the time of Plaintiff's arrest by Defendants Smith and Pierre, the U.S. currency was seized from the Plaintiff. The $6,737 was found on Plaintiff's person. The $93,654.12 was located during the alleged inventory search. (Glasses).

98. At the conclusion of the arrest and before Plaintiff was booked and sent to Rikers Island, Plaintiff was not issued a voucher for any of the above described currency providing Plaintiff an opportunity to gain access of the currency or the Cartier glasses.

99. Throughout the entire criminal case, which lasted from June 15, 2016 until July 21, 2017, the City of New York officials, or any other Defendants never provided Plaintiff with a notice to adequately challenge such seizure of the above described currency or property.

100. On or about June 15, 2016, Defendants Smith and Pierre located three receipt books during the inventory search of the Porsche. One of these receipt books were completely filled with receipts of an assortment of car deals and car deliveries, which shows where the $93,654.12 and $6,737.00 derived from.

101. Defendant Smith who was named the arresting officer, documented in the charged documents (i.e., Complaint Room Screening Sheet and Grany Jury Synopsis Sheet) that she was provided a handwritten receipt for the Porsche which was being

delivered to a buyer in New York.

102. On or about November 16, 2016, a combined Mapp/Huntley/ Dunaway hearing was held by the Court.

103. During this hearing, Defendant Smith testified, under oath that she never provided a receipt book when asked by Attorney Michael Sheinberg during cross-examination.

104. Defendant Smith lied under oath during the Mapp/Huntley/ Dunaway hearing to cover up the facts that Defendant Smith destroyed the receipt books that accounted for all the currency.

105. Defendant Smith lied under oath to make matters seem as if Plaintiff was engaged in illegal activities. Defendant Smith also documented that she believed the U.S. currency were derived from drug activity when she held the proof of where the currency came from.

106. On July 10, 2017, the Honorable ShawnDya L. Simpson, Justice of the Brooklyn Supreme Court, issued a ruling on the Mapp/Huntley/Dunaway hearings, suppressing all evidence.

107. Inside the Decision and Order, the Honorable Simpson stated as follows:

> "She (officer Smith) also testified that the defendant (Plaintiff) did not provide her with a receipt for the vehicle. However, in her paperwork she states that the defendant produced a handwritten receipt for the vehicle (see Grand Jury Synopsis sheet dated June 15, 2016). These inconsistencies are significant and bring into question the reliability of the officer's testimony. (see Decision and Order suppressing the criminal evidence)."

108. On or about July 20, 2017, the Assistant District Attorney ("ADA") Jingu Chong moved to dismiss the case following the July 10, 2017 Decision and Order.

109. During this hearing, the ADA stated that he would be

(22)

issuing a District Attorney's Release to the Property Clerks
Supervisor Cassandra Allen to release all property to Plaintiff's
Power of Attorney. The ADA emailed Cassandra Allen the voucher
numbers to be released.

110. On August 1, 2017, Plaintiff's Power of Attorney arrived
at the location to meet with the Property Clerk Supervisor
Cassandra Allen.

111. Cassandra Allen provided Plaintiff's Power of Attorney
with the District Attorney's Release. However, Cassandra Allen
provided two (2) incorrect voucher numbers to the Plaintiff's
Power of Attorney to deter the POA from obtaining the correct
property.

112. Property Clerk Cassandra Allen purposely gave the wrong
voucher numbers so she could not obtain the property, and to
cover up the facts that the City of New York were secretly,
without due process, holding the U.S. currency after the criminal
charges were dismissed, for another agency who had no venue,
Jurisdiction or right to seize the currency.

113. On August 1, 2017 Plaintiff filed a Complaint with the
Office of Internal Affairs describing the property that was
missing and/or had been destroyed by Defendant Smith. Plaintiff
also requested an investigation to be held against Defendant
Smith.

114. Unknown to Plaintiff, Defendants and/or the City of New
York had been secretly contacting authorities in the Western
District of Michigan to deprive Plaintiff of the U.S. currency.

115. Plaintiff states that, because Plaintiff's criminal
charges were dismissed in his favor, Defendants and/or actors

for the City of New York vindictively held the U.S. currency amounts because Plaintiff successfully won his case.

116. On or about August 16, 2017 Plaintiff was extradicted back to the Western District of Michigan.

117. On or about August 23, 2017, by form of a "letter," U.S. Marshal Senior Inspector Jesse Lake, Asset Forfeiture Financial Investigator from the Western District of Michigan, informed the City of New York that the Marshall's service and the Grand Rapids Police Department "were in the process of obtaining a warrant to seize" the above described $93,654.12 (and $11,491 siezed in another case that was dismissed in the Plaintiff's favor).

118. The U.S. Marshal's Service requested the New York Police Department to hold the funds until October 31, 2017.

119. Without due process, notice, or any form of the opportunity to contest, and/or challenge such request to hold Plaintiff's currency, that was ordered to be returned by the ADA to Plaintiff's mother, the City of New York held the U.S. currency for over two months.

120. Without any notice or opportunity to contest, or any knowledge of such communications between The City of New York's actors/officers and the Marhsals Service, the City of New York handed the amount of $105,145.31 to the U.S. Marshal's Service from the Western District of Michigan.

121. The seizure did not include the $6,737.00 that was found on Plaintiff's person.

122. Plaintiff was not afforded NOTICE and did not become aware that he had been deprived of the U.S. currency until March

of 2018. Plaintiff did not receive a copy of the letter from the Marshal's Service until May of 2018, when it became a part of the record. (See Transcript of May 10, 2018 Telephone Conference).

123. The City of New York, the New York Police Department, and its official actors violated the Plaintiff's Due Process rights by not returning Plaintiff's U.S. currency subsequently to Plaintiff's criminal charges being dismissed in his favor.

124. Defendants, City of New York and the NYPD violated Plaintiff's Due Process rights by failing to provide adequate NOTICE and an opportunity to be heard regarding the seziure of the U.S. currency.

125. Defendants and the City of New York knew that Plaintiff was being deprived of the U.S. currency by secretly and without Plaintiff's knowledge holding the U.S. currency without a right for over two months for another agency. In doing so violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments.

126. Defendants City of New York also knew that Plaintiff was never served NOTICE due to Plaintiff's Power of Attorney's repeated trips and attempts to recover the property after ADA Jingu Chong ordered the release of all property.

127. Plaintiff asserts that the record reflects that the U.S. Marshals or Western District of Michigan never established venue over the currency in New York and should not have held Plaintiff's currency for two months.

The City of New York and/or their officials used usurpation to take and hold Plaintiff's property without a right.

129. At all relevant times, the Property Clerk, the New York

Police Department, and its officers who were behind the curtain and secretly depriving Plaintiff of his property without due process were acting under the color of their official capacities and their acts were performed under the color of customs, policies, practices, statutes, ordinances, rules and regulations of the City, and STATE LAW.

130. These policies and practices were a moving force behind Plaintiff's injuries.

131. The above described officials were acting under the color and pretense of law when they, individually and collectively, engaged in the illegal conduct set forth and the deprivation of his rights secured to Plaintiff by the Fifth and Fourteenth Amendments.

132. As a direct result of the City of New York's employees' actions, Plaintiff has been subjected to a great loss of property and U.S. currency without Notice or Due Process. The property and U.S. currency should have simply been returned because Plaintiff was vindicated of all charged.

133. By reasons of above, Plaintiff has been damaged and seeks an order to return the U.S. currency in the amounts of $93,654.13 and $6,737.00, (with interest) and the City of New York to pay $2,400 for Plaintiff's Cartier glasses.

134. Plaintiff also seeks punitive damages in the amount of $ 25,000.00 due to constitutional violations.

SEVENTH CAUSE OF ACTION
CRUEL AND UNUSUAL PUNISHMENT

135. Plaintiff repeats paragraphs 1 through 133 and realleges each and every allegation as if it fully sets forth herein.

(26)

136. When Plaintiff arrived at Rikers Island, Plaintiff was placed in a holding cell with approximately twenty people.

137. Plaintiff was forced to lay on the concrete floor for approximately 3 days with no sleep, before finally being placed in a housing unit with a bed.

138. Plaintiff laid crammed in the holding cell on the floor four to five feet away from a toilet that did not flush and was filled with urine and feces.

139. Feces was smeared on the walls, and Plaintiff was forced to eat meals in the disgusting atmosphere.

140. Plaintiff suffered 3 days on a brick floor, no shower, no hygiene, no change of clothes, sheet, blanket, and no sleep, until the third day where Plaintiff was moved to a housing unit.

141. The conditions and treatment Plaintiff suffered damaged Plaintiff mentally, emotionally, and made Plaintiff feel inhumane and humiliated.

142. These conditions and treatment amounted to cruel and unusual punishment and damaged Plaintiff.

143. By reasons of above, Plaintiff seeks compensatory damages in the amount of $25,000 and punitive damages in the amount of $25,000 for Plaintiff's injuries.

## EIGHTH CAUSE OF ACTION
### MONELL CLAIM CITY/SUPERVISORY LIABILITY

144. Plaintiff repeats and realleges paragraphs 1 through 143 as it fully sets forth herein.

145. Defendant City, through the Property Clerk, New York Police Department, and its officers and employees have a custom, policy and practice of depriving individuals of personal property

(27)

without due process of law.

146. Plaintiff argues that he has demonstrated a widespread pattern of behavior that constitutes a custom or usage with the force of law.

147. The City of New York's illegal behavior of secretly corresponding with other Authorities and fraudulently concealing the facts of holding Plaintiff's currency violated Plaintiff's rights, due process and Fourteenth Amendment.

148. This policy and practice was a moving force behind Plaintiff's injuries in the loss of his U.S. currency.

149. Throughout each and every other cause of action listed herein, the City of New York and Supervisors of the officers stated herein, as well as those behind the curtain are liable for failing to appropriately oversee and audit the conduct of its employees/officers with respect to holding Plaintiff's currency for two months without a right, and all other causes of action herein where the Defendants violated Plaintiff's constitutional rights.

150. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests Judgment against Defendants as follows:

    (a) Compensatory damages against all defendants, jointly and severally;

    (b) Punitive damages against the individual defendants, jointly and severally;

(c) An ORDER for the City of New York to pay Plaintiff $93,654.12 that was illegally held by the City of New York in violation of due process;

(d) An ORDER to return Plaintiff's $6,737.00 that was not included in the seizure warrant;

(e) Such other and further relief that this Court deems just.

Respectfully Submitted,

Date: December 5, 2018          /s/ Christopher May-Shaw
                               Christopher May-Shaw
                               Reg. No. 11506-040
                               Federal Correctional Institution
                               P.O. Box 1000
                               Milan, MI 48160

## CERTIFICATE OF SERVICE

I, Plaintiff, Christopher May-Shaw, hereby certify that I have forwarded the original First Amended Complaint to the following:

Corporation Counsel,     U.S. District Court
S. MILLAR               Eastern District of New York
100 Church STREET       Federal Courthouse
NEW YORK, NY 10007      225 Cadman Plaza East
                        Brooklyn, NY 11201

being placed in the FCI Milan Postal Box, on this _5th_ day of _December_, 2018. Therefore, the mail box rule applies to the filing of this Amendment Complaint.

          /s/ Christopher May-Shaw
              Christopher May-Shaw