```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
```

ROBERT HOGAN, *also known as Christopher Payton May-Shaw*,

            Plaintiffs,

**MEMORANDUM AND ORDER**

17-CV-5591 (KAM)(LB)

   -against-

CITY OF NEW YORK, POLICE OFFICERS CANDICE SMITH, *Shield # 725*, DANIEL O'HARE, *Shield # 17735*, EARL ROCHESTER, *Shield # 31302*, SERGEANTS BRUNO PIERRE, KEVIN FRANCIS, *Shield # 1490*, and JAMES BERK, *Shield # 1311*,

            Defendants.

```
----------------------------------------X
```

**MATSUMOTO, United States District Judge:**

        Plaintiff Robert Hogan, also known as Christopher Payton May-Shaw ("plaintiff" or "May-Shaw"), commenced this action against the City of New York, Candice Smith, Daniel O'Hare, Earl Rochester, Bruno Pierre, Kevin Francis, and James Berk on September 21, 2017. (ECF No. 1, Complaint ("Compl.".) Plaintiff alleges, *inter alia*, that he was falsely arrested and imprisoned on June 15, 2016. (ECF No. 53, Amended Complaint ("Am. Cpl.").)

        Presently before the court are the defendants' objection to Magistrate Judge Bloom's order denying defendants' request to unseal documents related to plaintiff's August 10,

1

2016 arrest and the defendants' request for a stay of discovery deadlines pending resolution of the objection. (ECF No. 67, Objection to April 26, 2019 Order and Request for Stay of Discovery Deadlines ("Objection & Stay Req.").) For the reasons set forth below, defendants' objection is overruled.

## BACKGROUND

Plaintiff was a passenger in a vehicle that was stopped on June 15, 2016 by defendants Smith and Pierre, members of the New York City Police Department.[1] (ECF No. 53, Am. Cpl. ¶ 7.) Four John Doe officers subsequently arrived to assist Smith and Pierre. (*Id.* ¶¶ 12-13.) The police officers arrested the driver of the car, who had been unable to provide proof of registration and insurance. (*Id.* ¶¶ 9, 13.) Plaintiff told the police that the occupants of the car did not have registration and insurance documents because they were delivering the car to a buyer in New York on behalf of the car's owner. (*Id.* ¶ 10.) The car had a temporary license plate on it. (*Id.* ¶ 9, 12.) The police allowed the other passenger in the car to leave and arrested plaintiff. (*Id.* ¶¶ 15-16.)

When plaintiff arrived at the 67th Precinct, he was searched and had the following removed from him: Cartier sunglasses; three iPhones; $6,737 cash; 4 ID cards; a birth

---

[1] The factual allegations considered throughout this Memorandum and Order are taken from the plaintiff's complaint and the defendants' moving papers.

2

certificate; and a social security card. (*Id.* ¶ 19.) Plaintiff claims the sunglasses, iPhones, and cash were not ever vouchered or returned to him. (*Id.* ¶ 20.) After waiting several hours in a holding cell, plaintiff was brought to an interrogation room and read his Miranda rights. (*Id.* ¶¶ 22-23.) He was told that there had been an inventory search of the vehicle and that the following items were found: a loaded firearm; $93,000 cash; two receipt books; marijuana; plaintiff's personal paperwork; and clothing. (*Id.*) One of the detectives in the interrogation room referred to plaintiff as "Christopher Payton" and told him there was an outstanding warrant for his arrest in Michigan. (*Id.* ¶ 25.) Plaintiff was subsequently taken to central booking and scheduled for court that night. (*Id.* ¶ 27.)

Plaintiff met with a Legal Aid attorney that night, who informed him that he was being charged with possession of a fraudulent instrument (the license plate); possession of a fraudulent instrument (the ID cards); criminal possession of a weapon; and possession of marijuana. (*Id.* ¶ 28.) Plaintiff was arraigned on or about June 16, 2016 and held on a $75,000 bond. (*Id.* ¶ 29.) Plaintiff was transported to Rikers Island, where he alleges he slept on a concrete floor for three days in a holding cell that had food and feces all over the floors and walls. (*Id.* ¶ 31.) On the third day, plaintiff was transferred to a housing unit. (*Id.* ¶ 140.) He was brought to the Brooklyn

3

Supreme Court around June 21, 2016 for grand jury proceedings, and he was indicted on July 12, 2016. (*Id.* ¶ 32.)

Plaintiff was incarcerated for approximately 34 days before he was released on bond. (*Id.* ¶ 34.) On August 10, 2016, plaintiff was remanded and held again at Rikers Island. (*Id.* ¶ 35.) Plaintiff had a "combined Mapp/Huntley/Dunaway hearing" on November 16, 2016, and he claims that defendant Officer Smith lied at that hearing, testifying inconsistently with the charging documents and misrepresenting plaintiff's statement during the June 15, 2016 vehicle stop. (*Id.* ¶¶ 37-38.) After receiving briefing, the court ruled in plaintiff's favor to suppress evidence in his case. (*Id.* ¶ 42.) On July 19, 2017, the Assistant District Attorney moved to dismiss the indictment. (*Id.* ¶ 43.)

On August 16, 2017, plaintiff was extradited to Michigan. (*Id.* ¶ 116.) On August 23, 2017, U.S. Marshal Senior Inspector/Asset Forfeiture Financial Investigator Jesse Lake of the Western District of Michigan informed the City of New York that the Marshal's Service and Grand Rapids Police Department were in the process of obtaining a warrant to seize the the $ 93,654.12[2] discovered during the vehicle search. (*Id.* ¶ 117.)

---

[2] Plaintiff refers to both a seized amount of $90,000 and $93,654.12 in his complaint. The court does not determine which of these amounts is correct, but it is clear from the pleading that plaintiff is referring to the same seizure that occurred as a result of the June 15, 2016 inventory search.

4

New York held the funds until they transferred them to the Marshal's Service. (*Id.* ¶¶ 118-20.)

Plaintiff filed his lawsuit on September 21, 2017, alleging, *inter alia*, that he was falsely arrested and imprisoned following the stop of a car in which he was a passenger on June 15, 2016. (ECF No. 67, Objection and Stay Req. at 1.) He further alleges that he was searched without probable cause at the 67th Precinct, and that personal items, including cash, were taken from him and never vouchered or returned. (*Id.*) He alleges that an illegal inventory search was conducted on the vehicle, which led to the discovery of items that were later used as a basis to maliciously prosecute him for criminal charges that were brought against him and later dismissed. (*Id.*)

Plaintiff alleges that he was held in the custody of the New York City Department of Correction ("DOC") on Rikers Island in unconstitutional conditions before he was released on bail, and that he suffered "great indignity, humiliation, mental anguish, pain, and great distress, mentally and physically" as a result of his custody. (*Id.*)

Defendants first learned of plaintiff's August 10, 2016 arrest from plaintiff's complaint. (*Id.*) Defendants believe that plaintiff remained in custody for an additional eleven months beyond the time he served for the June 2016 arrest

5

as a result of the August 2016 arrest.  (*Id.*)  Plaintiff alleges that he was incarcerated for ten months, although it is not clear whether he means overall or in addition to his initial custody from the June 15, 2016 arrest.  (*See* ECF No. 53, Am. Compl. ¶¶ 49, 66.)

Plaintiff seeks, among other things, punitive and compensatory damages against the individual defendants for false arrest and imprisonment based on their role in his arrest on June 15, 2016, and against defendant Smith for her court testimony and his confinement at Rikers.  (*Id.* ¶¶ 49-54.) Plaintiff also claims that the City of New York is liable under respondeat superior for the causes of action included in his complaint.  (*Id.* ¶ 84.)  He alleges that the defendants' conduct violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.  (*Id.* ¶¶ 88, 90.)  Plaintiff alleges that as a result of defendants' actions, he was subjected to great indignities, humiliation, and pain and distress of the body and mind.  (*Id.* ¶ 91.)  He also alleges that he was in a newspaper related to his criminal charge, which caused further humiliation.  (*Id.*)

Plaintiff seeks compensation for his bail fee of $5,000, as well as to be reimbursed for the property seized at the precinct after his June 15, 2016 arrest (the sunglasses, iPhones, and $6,737 cash).  (*Id.* ¶¶ 62, 94, 97, 133.)  Defendant

seeks a return of the approximately $93,000 that was found during the inventory search of the vehicle. (*Id.* ¶¶ 62, 94, 97, 133.)

On November 13, 2018, as part of defendants' first request for production of documents, defendants requested that plaintiff execute and notarize releases that would allow the defendants to access information relevant to this litigation, including a release for access to records sealed pursuant to New York Civil Procedure Law §§ 160.50 and 160.55. (ECF No. 67, Objection and Stay Req. at 2.) That release would have allowed the defendants to access records related to the plaintiff's complete arrest history in New York. (*Id.*) On March 19, 2019, plaintiff sent defendants a signed blanket unsealing release and a letter explaining that there is not a notary available at the Federal Correctional Institution-Milan ("FCI-Milan"), where plaintiff is currently incarcerated. (*Id.*) Because the forms could not be notarized, plaintiff had an FCI-Milan staff member sign and stamp each release, but the forms were returned as invalid when defendants attempted to process them. (*Id.*)

On April 4, 2019, the parties spoke about discovery over the phone and plaintiff informed defendants that FCI-Milan still did not have a notary. (*Id.* at 2.) Defendants explained that they would ask Judge Bloom to endorse an unsealing order to unseal documents related to the August 10, 2016 arrest, as a way

7

of overcoming the notarization issue.  (*Id.*)  Plaintiff told the defendants for the first time that he did not consent to the unsealing of those documents because he thought they were "not relevant."  (*Id.*)

On April 12, 2019, defendants requested Judge Bloom's endorsement of an unsealing order to allow defendants to access plaintiff's August 10, 2016 arrest records and noted that plaintiff did not consent to the unsealing of those documents because he believed they were not relevant.  (ECF No. 61, Def. Apr. 12, 2019 Letter.)  On April 15, 2019, Judge Bloom issued an order scheduling a conference regarding defendants' request.  (ECF No. 62, Apr. 15, 2019 Order.)

During the conference, Judge Bloom asked the defendants why the August 15, 2016 arrest was relevant to this lawsuit.  (ECF No. 70-1, Apr. 26. 2019 Conference Transcript ("Tr.") at 9.)  Defendants responded that the later arrest "[went] to [plaintiff's] damages in terms of time[,] . . . custody[,] and . . . his . . . previous arrest and credibility."  (*Id.*)  Judge Bloom explained that she would not "sign the unsealing order because [she did not] believe that [the defendants were] entitled to get a different arrest unsealed that [was] not the subject of this lawsuit [and] that happened subsequent . . . because [defendants were] going to try to argue [plaintiff's] damages are limited."  (*Id.* at 10.)  Judge Bloom

8

informed the defendants that they could make whatever arguments they wanted and that they "could ask [plaintiff] questions at his deposition." (*Id.*)

In an order dated April 26, 2019, Judge Bloom "decline[d] to sign the orders proposed by defendants' counsel." (ECF No. 64, Apr. 26, 2019 Order.) Judge Bloom also directed defense counsel to "file a proposed order moving up the date of plaintiff's deposition as discussed during the conference." (*Id.*) On May 10, 2019, defendants filed their objection to Judge Bloom's order and requested that the court grant their request to unseal records related to plaintiff's August 10, 2016 arrest. (ECF No. 67, Objection & Stay Req.) Defendants also requested that the court stay discovery deadlines pending resolution of the unsealing request. (*Id.*) On May 14, 2019, at the court's request, defendants filed a transcript[3] of the April 26, 2019 conference and directed the court to the reasoning to which they objected. (ECF No. 70, Def. May 14, 2019 Ltr.) On May 17, 2019, Judge Bloom entered an order staying plaintiff's deposition, fact discovery, and pre-motion conference request deadlines in light of the defendant's objection before this court. (ECF No. 75, May 17, 2019 Order.) On May 19, 2019,

---

[3] Although the transcript uploaded to ECF was unredacted, the court was subsequently provided and only considered a redacted transcript which excluded specific information regarding the parties settlement negotiations. The redacted portion runs from line 18 through line 23 on page 9 of the transcript.

9

plaintiff filed his opposition to defendants' objection. (ECF No. 77, Plaintiff's Opposition to Defendants' Objection ("Pl. Opp.").)

**LEGAL STANDARD**

**I. Review of Non-Dispositive Order Issued by a Magistrate Judge**

"[A] magistrate judge's ruling on non-dispositive pretrial matters should not be disturbed by the district judge absent a determination that such findings were 'clearly erroneous or contrary to law.'" *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 29 F. Supp. 3d 142, 145 (E.D.N.Y. 2014) (citing 28 U.S.C. § 636(b)(1)(A)); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) ("A magistrate [judge] . . . may issue orders regarding nondispositive pretrial matters[, which are reviewed] "under the 'clearly erroneous or contrary to law standard.'"). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009) (citation omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." (*Id.*) (citation and internal quotation marks omitted). "Pursuant to this highly deferential standard of review, magistrate judges are thus afforded broad discretion in

resolving discovery disputes, and reversal is appropriate only if that discretion is abused." *Koumoulis*, 29 F. Supp. 3d at 145.

**DISCUSSION**

For the reasons herein, the court finds that Judge Bloom's order was neither clearly erroneous nor contrary to law. For the reasons below, the court affirms Judge Bloom's ruling dated April 26, 2019 and denies defendant's request for an order unsealing the plaintiff's August 10, 2016 arrest records. The court addresses defendants' objection below.

**I. Defendants' Objection**

Defendants claim that Judge Bloom's order is contrary to law. (ECF No. 67, Objection & Stay Req. at 3.) Defendants argue that their request for information related to plaintiff's August 10, 2016 arrest is "plainly within the bounds of permissible discovery under the Federal Rules of Civil Procedure, as plaintiff's criminal history is likely to be admissible at trial to mitigate or controvert damages." (*Id.*) They argue that the records are "of particular importance" because the revocation of plaintiff's bail from his June 15, 2016 arrest, as a result of the August 10, 2016 arrest is "directly relevant to plaintiff's alleged deprivation of liberty—an element of a federal malicious prosecution—and any damages flowing therefrom." (*Id.*) Defendants also argue that

the "August 10, 2016 arrest and subsequent reincarceration are directly relevant to the cause and extent of the[] alleged [emotional] damages" that resulted from the June 15, 2016 arrest and prosecution. (*Id.*)

Defendants assert that questioning the plaintiff about the August 10, 2016 arrest during his deposition, as Judge Bloom suggested at the conference, and which they plan to do, is not a substitute for obtaining the plaintiff's arrest records. (*Id.* at 4.) They claim they are entitled to receive and review such documents prior to a deposition. (*Id.*) Defendants argue that without the documents, they would be unable to refresh plaintiff's recollection if he cannot recall the specifics of his August 2016 arrest and prosecution and, moreover, that they would have to accept plaintiff's testimony absent contradicting documents. (*Id.*) They claim they would be severely prejudiced if they were limited to plaintiff's memory alone and were unable challenge his memory or question him further. (*Id.*)

Defendants cite several cases in the Eastern and Southern Districts of New York for the proposition that Judge Bloom's order denying the unsealing of plaintiff's August 10, 2016 records is contrary to case law holding that discovery of arrest records for individuals seeking damages for false arrest is proper. (*Id.* at 3.) The cases cited by defendants, however, concern discovery of information related to prior arrests, on

the basis that prior criminal history is relevant to a plaintiff's credibility and damages. (*See id.*)

Defendants' unsealing request concerns records for an arrest that occurred subsequent to the arrest on which plaintiff's complaint is based, rather than prior arrest history. It is true that some "courts in [the Eastern] [D]istrict have previously granted civil rights plaintiffs discovery into similar acts of alleged misconduct, even if those acts post-dated the events at issue in the case." *Chillemi v. Town of Southampton*, No. 12-CV-3370 (ADS), 2015 WL 5838724, at *9 (E.D.N.Y. Oct. 7, 2015). But the analysis does not end there. *Id.*

"Relevancy cannot be reduced to mere chronology; whether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative to its admissibility." *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990). "The locus of the line between discovery reasonably calculated to lead to admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations of the pleading." *287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11-CV-976 (KAM), 2012 WL 1899222, at *5 (E.D.N.Y. May 24, 2012).

Judge Bloom determined that this case arises from plaintiff's June 15, 2016 arrest, and that the August 10, 2016

arrest is not the subject of the instant action. This determination is supported by the allegations in plaintiff's complaint.

Plaintiff states that he was arraigned for the June 15, 2016 arrest on or about June 16, 2016 and held on a $75,000 bond. (ECF No. 53, Am. Cpl. ¶ 29.) He subsequently posted bail and was released for approximately 34 days before he was remanded. (*Id.* ¶¶ 34-35.) The amended complaint mentions August 10, 2016 once, noting that it was the date plaintiff was "remanded back into custody and held again at Rikers Island to answer the criminal charges." (*Id.* ¶ 35.) Plaintiff now seeks the return of his $5,000 bail payment. (*Id.* ¶¶ 62, 94.) The complaint does not make any allegations regarding any of the defendants in relation to the August 2016 arrest, and it does not suggest that the August 2016 arrest would provide evidence of similar misconduct by the defendants.

Furthermore, plaintiff was only in a position to forfeit a bail payment on August 10, 2016 because he had been arrested previously on June 15, 2016. The damages at issue in this case flow from the earlier arrest, and it is the legality of the June 15, 2016 arrest that is at issue here. Whether or not the August 10, 2016 arrest was lawful, plaintiff's situation of having forfeited his bail payment and being ineligible for bail for the August arrest was premised on plaintiff having been

14

arrested previously in June 2016. Knowledge of the circumstances of the August 2016 arrest is unnecessary for defendants' preparation of their defense case because liability and damages will hinge on whether the earlier arrest was lawful.

During the conference, plaintiff also expressed his understanding that the August 10, 2016 arrest was an event distinct from the arrest at issue in this case. (*See* ECF No. 70-1, Apr. 26, 2019 Conference Tr. at 8 ("I would also object to [unsealing the August 2016 case file] because that case was dismissed in my favor. . . . I should be filing another lawsuit against the City of New York because that case was also dismissed. And, of course, the $11,000 was seized in that case[.]").) Plaintiff alleged in his amended complaint that "$11,491[4] [was seized] in another case that was dismissed in [his] favor" (Am. Cpl. ¶ 117), but does not seek the return of that amount in this case.

Although plaintiff does not seek a return of the $11,491 in this action, he does seek repayment for two monetary seizures in the amounts of $6,737 and $93,654.12. (Am. Cpl. ¶¶ 62, 94, 133, at 28-29.) Plaintiff alleges that $6,737 was taken from him when he was searched at the police precinct after his June 15, 2016 arrest. (*Id.* ¶¶ 19-20, 96-97.) Plaintiff also

---

[4] The court notes the discrepancy between the amount referred to in the Amended Complaint and during the conference, but assumes that the plaintiff was referring to the same seizure.

15

alleges that $93,654.12 was discovered and seized during the inventory search that occurred in relation to the June 15, 2016 arrest. (*Id.* ¶¶ 24, 96-97.) Plaintiff claims that a U.S. Marshal Senior Inspector & Asset Forfeiture Financial Investigator informed the City of New York that he was in the process of obtaining a warrant to seize the $93,654.12 (as well as the $11,491). (*Id.* ¶ 117.) Plaintiff's request for repayment from the city of the $6,737 and $93,654.12 seizures, but not the $11,491, suggests that the circumstances surrounding the August 2016 arrest are not relevant for resolving this action.

Judge Bloom's order does not misapply or fail to apply relevant statutes, case law, or rules of procedure, and is, therefore, not contrary to law. An arrest subsequent to the arrest at issue in this case, as described by plaintiff's allegations in his complaint and statements during the April 26, 2019 conference, does not affect plaintiff's credibility regarding the extent of his emotional damages, in contrast to a prior arrest, which could provide insight regarding plaintiff's experience with the criminal justice system and whether the damages he seeks are appropriate.

16

**CONCLUSION**

For the foregoing reasons, the court affirms Judge Bloom's ruling dated April 26, 2019. The court also denies defendants' request to stay pending discovery deadlines as moot in light of Judge Bloom's May 17, 2019 order.

**SO ORDERED.**

Dated:   May 31, 2019
         Brooklyn, New York

_____/s/_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York